Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6826 | DATE | 1/18/2001 |
| CASE TITLE | Residents of The New Ritz vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the foregoing reasons, this court dismisses the complaint without prejudice. All other pending motions are moot. (27-1,14-1,8-1,17-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | JAN 2 2 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RESIDENTS OF THE NEW RITZ HOTEL, and others similarly situated, | ) ) ) | |
| Plaintiffs | ) ) ) | |
| | ) ) | No. 99 C 6826 |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | Judge John A. Nordberg |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons stated below, the motion is granted.

## BACKGROUND[1]

Plaintiff Clarence Porter is a resident of the New Ritz Hotel (the "New Ritz"), which is a single room occupancy ("SRO") hotel located in the south loop business district in the City of Chicago. The residents of the New Ritz are poor and predominantly black. They pay a modest fee that amounts to an effective rate of less than $6 a night, although they do not have any formal leasehold interest. Without the New Ritz, many of these individuals would be homeless. Porter

**DOCKETED**

JAN 2 2 2001

_____

[1] The following facts are taken from plaintiff's amended complaint and are assumed to be true for purposes of deciding this motion to dismiss.



has filed this *pro se* action in which he seeks to represent a class of individuals residing at the New Ritz and at other SRO's in the south loop district.[2] The defendant is the City of Chicago.

The City is seeking to condemn the New Ritz and certain other nearby buildings as part of a larger redevelopment project of the south loop area. According to plaintiff, the City's officially stated purpose for the redevelopment project is to beautify the south loop. Plaintiff believes, however, that the City really has a more sinister goal of "urban cleansing." Specifically, plaintiff alleges that the City – and its Mayor – are seeking to rid the south loop area of poor blacks in order to present a "white-washed" city that would be more appealing to tourists. (Am. Cmplt. at 5.) Plaintiff also maintains that the Mayor is using the condemnation power for his own benefit. The Mayor allegedly wants to condemn these buildings so that he can then transfer them to his rich, white friends who in turn will reciprocate with "increased donations into [the Mayor's] campaign coffers." (*Id.* at p.8.)

As evidence of the City's illicit intentions, plaintiff states that the City is seeking to condemn the New Ritz yet is not seeking to condemn other nearby buildings that are owned by white owners or that do not house poor black residents. For example, the City is not attempting to condemn a cleaners located next to the New Ritz. Plaintiff asserts that the owner of the New Ritz does not wish to sell the building and instead would like to continue operating it as an SRO for residents like plaintiff. Plaintiff indicates that the owner is actively opposing the condemnation and has spent large sums of money in an effort to bring the New Ritz into compliance with the building code.

---

[2]There is a pending motion for class certification.

Both parties have stated that there is a pending condemnation proceeding in Illinois state court concerning the New Ritz. *City of Chicago v. Filmar, Inc. of Chicago*, 99 L50785. The owner of the New Ritz has participated in that action, arguing that the proposed condemnation violates various state and federal constitutional provisions.[3] Beyond these facts, we do not know what has happened in the state court action and will proceed based on the assumption that it is still pending.

Plaintiff has not intervened in the state court action even though it appears that he has a legal right to do so. He decided not to intervene because of his belief that the Illinois state court system is "composed of wealthy, mostly-white politicians, [] whose agenda is to conceal the poor and black from the tourists and other citizens." (Am. Cmplt. at p.11.) He elsewhere states that "the circuit courts in the city are not minority friendly but rather are biased where they have an interest in seeing the poor and black removed from the City." (6/7/00 Pls. Resp. at 18.) For these reasons, he deems it a "waste of resources" to participate in the state court action. (*Id.*)

In the amended complaint, plaintiff alleges that the City is engaged in a broader plan to move the poor and homeless out of the south loop. However, the only real manifestation of this

---

[3]Although it is undisputed that the owner of the New Ritz filed a traverse and a motion to dismiss in the condemnation proceeding, there is some dispute as to whether the owner is still opposing the condemnation. The City states that the owner withdrew the motion at some later point in time. However, plaintiff disputes this point and maintains that the owner is continuing to actively oppose the condemnation.

plan is the condemnation of various SRO's, including the New Ritz.[4] Plaintiff states that he has a constitutional right to continue living where he is living.

Plaintiff is asserting claims pursuant to 42 U.S.C. §§ 1981, 1985, and 1986, and possibly also § 1983.[5] He is seeking an injunction and money damages, including punitive damages. The precise nature of the injunction sought is not completely clear. The gist of his request is that he wants us to stop the state court condemnation proceeding and thereby prevent the City from evicting him from the New Ritz.

## DISCUSSION

The City has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The City's main argument is that the complaint contains conclusory allegations of racial discrimination and therefore fails to satisfy federal notice pleading standards. The City also argues that the plaintiff has no Article III standing based on the prudential rule that a party generally should not be allowed to assert the legal rights of a third party. According to the City, plaintiff is effectively asserting claims that should be made by the owner of the New Ritz.

---

[4]Plaintiff does mention in one place that the City has failed to provide affordable, alternative housing for individuals who will be forced to move out of the various SRO's. However, plaintiff never connects this isolated allegation to any of his specific claims. With regard to this issue, this court conducted an informal hearing at which a representative for the City explained to plaintiff and other interested residents of the New Ritz the various alternative housing options the City was offering to residents like plaintiff. This testimony was merely offered as a courtesy and has not been considered in deciding this current motion to dismiss.

[5]In his amended complaint, plaintiff states at one point that he is bringing a civil rights action under § 1983 and therefore it appears that he intends to assert a § 1983 claim. The City notes that, although the plaintiff mentions § 1983, he has not developed that claim to the same degree of detail as his §§ 1981, 1985, and 1986 claims.

In addition to these two arguments, there are several other jurisdictional doctrines potentially applicable. Previously, in reviewing the original complaint in the context of ruling on plaintiff's request for in forma pauperis status, this court raised a concern that plaintiff's claims would eventually run into the Rooker-Feldman doctrine based on the fact that plaintiff's alleged injury would only occur if the state court issued an order approving the condemnation of the New Ritz. *See* 12/01/99 Min. Ord. In that order, we warned plaintiff that he should consider pursuing his claims in state court because those claims may be later barred by Rooker-Feldman or other related doctrines.

In response to this court's concern, the City indicated in its opening memorandum in support of its motion to dismiss that it believed that the Rooker-Feldman doctrine may eventually be applicable but that it was technically not available at this time because the state court proceedings were not final. However, the City pointed to two other similar doctrines: (i) *Younger* abstention; and (ii) the Anti-Injunction Act, 28 U.S.C. § 2283.

Although the City identified these two doctrines, it did not develop the argument for applying them here. In his response brief, plaintiff did address these issues, arguing that neither Rooker-Feldman, *Younger* abstention, nor the Anti-Injunction Act should apply. It does not matter whether the City actively developed these arguments because "federal courts are always 'obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction'," *Tylka v. Gerber Products Co.*, 211 F.3d 445, 447 (7th Cir. 2000).

We found a series of cases, some extending back a number of years, in which individuals have challenged land development programs or have otherwise argued in federal court that a public body was using its powers of eminent domain for an improper purpose. In researching

-5-

this issue, four cases seemed especially on point: (i) *Green Street Assoc. v. Daley*, 373 F.2d 1 (7th Cir. 1967); (ii) *Blankner v. City of Chicago*, 504 F.2d 1037 (7th Cir. 1974); (iii) *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975); and (iv) *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996).

First, in *Green Street Assoc. v. Daley*, 373 F.2d 1 (7th Cir. 1967), the Seventh Circuit considered a challenge to an urban renewal project for the Central Englewood area in Chicago. The City was planning to acquire "by eminent domain [] approximately 300 buildings, consisting of about 600 dwelling units, eighty-five per cent of which are occupied by Negroes." *Id.* at 4. The plaintiffs, consisting of a non-profit association and 125 individual blacks who were owners or lessees of property in Englewood, filed suit to enjoin the condemnations. They alleged that

> the Central Englewood Project is not a good faith urban renewal, but rather a deliberate plan to create a no-Negro "buffer zone" between the shopping area and the surrounding residential community so that the shopping area will be more attractive to white customers and thereby rescue the commercial trade and business of the area from a declining condition.

*Id.* The plaintiffs filed a number of claims, including one under 42 U.S.C. § 1983.

The district court dismissed the complaint, and the Seventh Circuit affirmed. The Seventh Circuit explained the basis for its decision as follows:

> [I]n nearly all cases the question of whether the land to be acquired will be devoted to a public purpose is more appropriate for the state court to make in the condemnation proceedings. *Zurn v. City of Chicago*, 389 Ill. 114, 59 N.E.2d 18 (1945). The plaintiffs' claim that a portion of the urban renewal project is merely a sham or ruse to accomplish Negro clearance can be encompassed within the issues there, at least insofar as it relates to the actual purpose of the taking, as distinct from the motives that may have actuated the legislative body. It must be assumed that the state court will protect the plaintiffs' federal constitutional rights. "The state courts are as firmly bound by the Constitution of the United States as is this (federal) Court and (the proper) forum for enforcement of any constitutional rights that may have been violated is in the * * * state courts with the right of ultimate determination by the Supreme Court of the United States." *Baber v. Texas Util. Co.*, 228 F.2d 665, 666 (5th Cir. 1956).

> * * *
>
> In summary, therefore, cases presenting challenges to urban renewal programs are matters for the condemnation proceedings in the state courts if the taking is ostensibly for a public purpose, even though violations of federally guaranteed rights are claimed. Only in those exceptional cases like *Progress*, where the facts alleged indicate to all outward appearances that the taking is designed solely to deny constitutional rights, is the power of eminent domain subject to the prior scrutiny of federal courts.

*Id.* at 6-7.

Second, in *Blankner v. City of Chicago*, 504 F.2d 1037 (7th Cir. 1974), the Seventh Circuit considered a challenge to a renewal project involving land at the south end of the University of Chicago. The plaintiff, who owned a rental apartment in the designated area, alleged that the City of Chicago and the University were engaged in a conspiracy whereby the City would condemn the land in question by falsely declaring it to be a slum and blighted area and then would sell it to the University at a below market price; in return, the City would acquire 14 million dollars in urban renewal credits. *Id.* at 1039. The federal district court dismissed the action because the claims were barred by either collateral estoppel or res judicata. The Seventh Circuit affirmed, stating that the plaintiff "had an opportunity to litigate the slum and blight issue in the condemnation proceeding, but she deliberately bypassed it." *Id.* at 1041. The Seventh Circuit further stated: "We adhere to the ruling in *Green Street* that cases like this presenting challenges to urban renewal programs are to be decided in the state court condemnation proceedings 'if the taking is ostensibly for a public purpose, even though violations of federally guaranteed rights are claimed.'" *Id.* at 1042.

Third, in *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975), the Seventh Circuit considered a challenge to condemnation of land that was to be used to build a convocation and

athletic center in the Village of Rosemont. The Village instituted condemnation proceedings in state court against various property owners in the designated area. While the state court actions were pending, the affected property owners filed a federal § 1983 action, arguing that the land was being taken for a private and not a public purpose. The district court dismissed the action. The Seventh Circuit affirmed based on *Younger* abstention:

> Illinois eminent domain procedure allows condemnees to question the public nature of the taking and to raise other defenses in the form of a 'traverse' or motion to dismiss the condemnor's petition. Ill.Rev.Stat., ch. 47, § 10; *Board of Education v. City of Chicago*, 402 Ill. 291, 298, 83 N.E.2d 714, 718--19 (1949). Since plaintiffs may raise the crux of their federal constitutional claims in the pending state proceedings, federal court intervention is unnecessary. *Golden Dawn Shops, Inc. v. Department of HUD*, 333 F.Supp. 874 (E.D.Pa.1971); *Georgia v. City of Chattanooga, supra*, 264 U.S. at 483--84, 44 S.Ct. 369. It would be inappropriate for us or the district court below to assume that the Illinois courts would refuse to consider plaintiffs' federal constitutional claims once they were properly raised in those proceedings. *Golden Dawn Shops, Inc. v. Department of HUD*, 333 F.Supp. 874, 879 (E.D.Pa.1971).
>
> Furthermore, we believe that the mere existence of a federal constitutional attack on an eminent domain proceeding of the state should not be grounds for a district court's decision not to abstain. Since there is a 'possibility of a federal question in every taking by eminent domain under state authority,' Nichols, Law of Eminent Domain, § 413(2) (1973), such a factor would nearly always preclude abstention in this type of case.
>
> Plaintiffs have the state courts of Illinois with its appellate system at their disposal for the adjudication of their federal constitutional claims. *See* Ill.Rev.Stat., ch. 47, § 12. If the Illinois Supreme Court should deny them 'any rights secured to (them) by the Constitution and laws of the United States,' the case may be brought to the Supreme Court of the United States for reexamination and review. *Georgia v. City of Chattanooga, supra*, 264 U.S. at 484, 44 S.Ct. at 371.

*Id.* at 198-99 (footnotes omitted).

Fourth and finally, in *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996), the Seventh Circuit again considered a challenge to a condemnation action. Although this case did not involve a

larger development project, as did the first three cases, it did involve a claim that a condemnation was being pursued for an improper purpose. The plaintiffs alleged that, because they publicly supported the opposition party in an earlier election of the village board of trustees, the current board sought to condemn their property in "an act of political retaliation." *Id.* at 1363. The plaintiffs filed a claim under 42 U.S.C. § 1983 against the Village trustees, seeking an injunction as well as money damages. The district court dismissed the claim, finding that the plaintiffs' claims were barred by res judicata based on the state court judgment. The state court, after a hearing, entered an order finding that the power of eminent domain was being "exercised properly." *Id.* at 1364.

On appeal, the Seventh Circuit affirmed the dismissal on the ground that the action was barred by the Rooker-Feldman doctrine rather than res judicata. As the court explained in the opinion, the Rooker-Feldman doctrine is jurisdictional and "is based upon recognition of the fact that inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Id.* at 1365. Thus, in any case in which a federal court "is in essence being called upon to review the state-court decision," then the federal court should decline jurisdiction. *Id.* at 1369. This principle applies even to claims not raised in the state court proceeding if those claims are "inextricably intertwined" with the state court judgment. *Id.* The proper way to challenge the state court ruling is through the state court system and ultimately to the United States Supreme Court, which is the court authorized to hear appeals from final state court determinations. *Id.* at 1368-69.

In determining whether the Rooker-Feldman doctrine is applicable, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the

state court judgment itself or is distinct from that judgment." *Id.* Applying this test, the Seventh Circuit in *Garry* concluded that the "injury alleged was only complete when the state court actually condemned the property." *Id.* at 1368. In other words, if the state court had not approved of the condemnation, then the plaintiffs would not have been injured. The Seventh Circuit noted that the state court found that the power of eminent domain was being properly exercised. *Id.* This finding directly undercut plaintiffs' argument that the power was being used unconstitutionally: "[o]bviously, the power of eminent domain is not being properly exercised if it is being unconstitutionally exercised, as plaintiffs allege." *Id.* The Seventh Circuit concluded that it did not matter that the plaintiffs failed to raise their claim in the state court. *Id.* ("That the plaintiffs may have already waived the opportunity to challenge the constitutionality of the condemnation, leaving them with no forum in which to assert their claim, does not affect our lack of jurisdiction under Rooker-Feldman."). *Id.* at 1369.[6]

To summarize, in all four cases the Seventh Circuit affirmed dismissal of a federal complaint seeking to challenge a condemnation. The underlying premise in each case was the same; namely, that the state court is the "proper forum" to adjudicate matters related to condemnation and that the state court is fully equipped to address any federal constitutional claims. *Blankner*, 504 F.2d at 1042 ("These issues were litigated or could have been litigated in the state court, the proper forum."); *Garry*, 82 F.3d at 1369 n.13 ("Under the principles of comity and federalism, we cannot and will not assume that the plaintiffs' constitutional claims would be treated any differently by the courts of Illinois than by a federal court.").

---

[6]The court held that all claims were barred, including the claim for money damages.

As a factual matter, the four cases are similar to the present case. For example, in *Green Street*, the plaintiffs alleged that the City's stated goal for its urban renewal project was merely a "sham or ruse" and that the City's real objective was to create a "shopping area will be more attractive to white customers and thereby rescue the commercial trade and business of the area from a declining condition." *Green Street*, 373 F.2d at 4, 6-7. That is basically the same allegation plaintiff is making here. *See, e.g.*, Am. Cmplt. at p.5 ("Defendants wish to hide the poor and black from tourists by showing and creating a non-diversified, white-washed City of Chicago."). In both *Blanker* and *Ahrensfeld*, the plaintiff alleged that the proposed condemnation was an improper attempt to benefit private parties. *Blanker*, 504 F.2d at 1041; *Ahrensfeld*, 528 F.2d at 195. Similarly here, plaintiff alleges that the City and its Mayor are using the power of eminent domain "to create profits for their friends and constituents." (Am. Cmplt. at p.6.) In *Garry*, the plaintiffs alleged that their property was targeted for condemnation solely based on their status as political opponents. Plaintiffs in this case allege that the City is targeting only those buildings occupied or owned by blacks.

The above four cases thus affirm that the state court is the proper forum to challenge a condemnation. The gist of the amended complaint is that the proposed condemnation of the New Ritz is not in the public benefit. That question is central to any condemnation proceedings. In his amended complaint, plaintiff cites to a number of state court decisions that reiterate this point and illustrate that the state court is equipped to handle these types of arguments. *See Southwestern Illinois Dev. Auth. v. Nat'l City Env.*, 710 N.E.2d 896, 901 (Ill. App. Ct. 1999) ("Illinois cases have embodied the idea of a social contract by imposing a public-purpose limitation on the exercise of the eminent domain power.") (Am. Cmplt. at 8); *Village of Skokie v.*

-11-

*Gianoulis*, 632 N.E.2d 106, 113 (Ill. App. Ct. 1994) ("It is the settled law of Illinois that where a defendant in a condemnation suit contests the petitioner's right to condemn by filing a traverse, the traverse acts as an inquiry into the necessity for the taking and the burden is upon the petitioner to maintain its right to condemn by proper proof.") (Am. Cmplt. at 12); *City of Elgin v. Elgin Nat'l Bank*, 529 N.E.2d 639 (Ill. App. Ct. 1988) (Am. Cmplt. at 13).

The four federal cases discussed above rested on differing underlying legal doctrines even though they all ultimately were based on the same broader rationale. *Blanker* was based on preclusion, while *Ahrensfeld* was resolved under *Younger* abstention and *Garry* rested on the Rooker-Feldman doctrine. *Green Street* appears to be based on a general notion of comity.[7] In addition, the City argues that plaintiff has no standing under Article III. There also may be a question of ripeness in that the state court condemnation proceedings are not final and thus no concrete action has been taken to evict plaintiff.

We conclude that this case should be dismissed based on both *Younger* abstention and the Rooker-Feldman doctrine. *See, e.g., Pelfresne v. Village of Rosemont*, 952 F.Supp. 589, 592 (N.D. Ill. 1997) ("[o]n several occasions, courts in this circuit have abstained from enjoining state eminent domain proceedings based on the *Younger* doctrine."); *RFMS, Inc. v. Village of Alsip Park Dist.*, 1990 WL 71028, *1 (N.D. Ill. May 17, 1990); *Dach v. Frech*, 1989 WL 75422, *3 (N.D. Ill. June 20, 1989).

Based on notions of federalism and comity, the *Younger* doctrine holds that a federal court generally should not interfere with ongoing state judicial proceedings. *Younger v. Harris*,

---

[7]*Green Street* was decided before the *Younger* abstention and Rooker-Feldman doctrines were fully developed.

401 U.S. 37 (1971). The following three factors determine whether *Younger* abstention is appropriate: (1) the adjudicative proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the plaintiff was allowed an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The first two requirements are not in dispute. First, as noted above, we are proceeding on the assumption that the state court action is still pending. Second, there is no question that the state's eminent domain proceeding implicates an important state interest. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28-29 (1959); *Ahrensfeld*, 528 F.2d at 198.

The third requirement asks whether the party had an adequate opportunity to raise his constitutional claims. Here, plaintiff was aware of the state court proceedings. He does not dispute the fact that he had a legal right to intervene. *See Garry*, 82 F.3d at 1369 n.13. Instead, he argues that it would have been a waste of resources to do so because the state court system is not "minority friendly." Although there is a bad faith exception to the *Younger* abstention doctrine, to fall within that exception, plaintiff must allege "specific facts to support [his] inferences of bad faith, bias, and retaliation" and may not rely on "mere allegations and conclusions" *Crenshaw v. The Supreme Court of Indiana*, 170 F.3d 725, 729 (7th Cir. 1999). Plaintiff has not pointed to any facts to suggest that there is a specific conspiracy involving the court officials in this particular case. Rather, what he is really claiming is that state court system is inherently biased as an institution. However, as the Seventh Circuit noted in *Green Street*, there is a presumption that the state courts will adequately address plaintiff's constitutional claims. 373 F.2d at 6-7. Plaintiff has not provided any specific allegation to rebut that

-13-

presumption. In short, he has not presented any valid reason for not pursuing his claims in state court, as we previously advised him to do when we ruled on his request to proceed in forma pauperis.[8]

In addition to relying on *Younger* abstention, we also conclude that the Rooker-Feldman doctrine justifies dismissal. Here, as in *Garry*, plaintiff's alleged injuries will "only [be] complete when the state court actually condemn[s] the property." 82 F.3d at 1368. A state court finding that the condemnation power was being properly exercised necessarily would contradict any allegation here that the power was being unconstitutionally exercised. As we have noted, the state court proceeding is not final, which the City states is a prerequisite to the application of the Rooker-Feldman doctrine. Although this point may be true, it is inevitable that this case will eventually run into the Rooker-Feldman doctrine. If the state court issues an order approving the condemnation, then this court essentially would be required to review the correctness of that ruling, something Rooker-Feldman prohibits us from doing. If, on the other hand, the state court does not approve the condemnation, then plaintiff has no injury.

---

[8]In any event, even though plaintiff has so far chosen not to intervene in the state court action, the owner of the New Ritz has participated in that proceeding and has apparently opposed the condemnation based on the same basic reasons advanced by plaintiff here. This fact underlies the City's Article III argument that plaintiff is really trying to assert the rights of the owner.

-14-

## CONCLUSION

For the foregoing reasons, this court dismisses the complaint without prejudice. All other pending motions are moot.

**ENTER:**

*/s/ John A. Nordberg*
JOHN A. NORDBERG
Senior United States District Court Judge

DATED: Jan. 18, 2001